CLEXTON v CITY OF DETROIT

Docket No. 104144. Submitted December 12, 1988, at Detroit. Decided August 8, 1989. Leave to appeal applied for.

William Clexton was an employee of the City of Detroit who resigned and was eligible for a deferred pension provided for by the city charter. He brought an action against the city in the Wayne Circuit Court for payment for one-half of his accumulated and unused sick time and for hospitalization and medical insurance coverage. The court, Charles S. Farmer, J., granted summary disposition for plaintiff. Defendant applied for leave to file a delayed appeal, which the Court of Appeals denied. Defendant sought leave to appeal in the Supreme Court which, in lieu of granting leave to appeal, remanded to the Court of Appeals for consideration as on leave granted, 429 Mich 866 (1987).

The Court of Appeals *held:*

1. Plaintiff is not entitled to payment for accumulated sick time. Payment is only for members of the retirement system who retire with a pension paid by the system. Plaintiff, as a resigned employee entitled to a deferred pension, was not a member of the retirement system.

2. Plaintiff was entitled to hospitalization and medical insurance coverage.

Affirmed in part and reversed in part.

1. MUNICIPAL CORPORATIONS — CHARTERS — JUDICIAL CONSTRUCTION.

The general rules of statutory construction are applicable in construing provisions of a city charter.

2. MUNICIPAL CORPORATIONS — PENSIONS — JUDICIAL CONSTRUCTION.

Municipal pension laws, being remedial in nature, should be liberally construed in favor of the persons intended to be benefited thereby; if a provision is ambiguous and uncertain,

REFERENCES

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 123, 195, 398 *et seq.*; Pensions and Retirement Funds §§ 85, 1603 *et seq.*; Statutes §§ 142 *et seq.*

See the Index to Annotations under Municipal Corporations; Pension and Retirement.

the courts should consider the obvious purposes and objects sought to be attained and construe the language used, insofar as it reasonably permits, to the end of giving it vitality and efficiency in the accomplishment of such purposes and objects.

3. Municipal Corporations — Charters — Judicial Construction.

It is a well-established rule of charter construction that the language used must be given its plain meaning, and no words should be treated as surplusage; charter provisions pertaining to a given subject matter must be construed together, and if possible harmonized.

*Gregory, Van Lopik, Moore & Jeakle* (by *Nancy Jean Van Lopik*), for plaintiff.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Thomas C. Walters* and *William G. Ashworth,* Assistant Corporation Counsel, for defendant.

Amici curiae:

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Mark Brewer*), for Senior Accountants, Analysts and Technical Employees.

Before: Weaver, P.J., and Sullivan and R. A. Benson,* JJ.

R.A. Benson, J. Defendant City of Detroit appeals from an order granting summary disposition to plaintiff William Clexton on his complaint seeking certain retirement benefits from defendant. This case is before this Court on remand for consideration as on leave granted pursuant to an order of the Supreme Court. *Clexton v City of Detroit,* 429 Mich 866 (1987).

Plaintiff was employed by defendant from July,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1952, until his resignation on January 27, 1978. At the time of his resignation, plaintiff was more than forty years old, but less than fifty-five. He had 25¼ years of credited service with defendant and had accumulated 265 days of unused sick leave. At resignation, plaintiff was entitled to a deferred vested pension under Detroit Charter, tit IX, ch 6. The deferred pension, commonly known as the "40 and 8" benefit, was provided in art VI, part A, § 1.4:

> Retirement allowance for certain persons leaving city employment after eight years service.
>
> Should any member who (1) has attained age forty years, and (2) has eight or more years of credited service, leave the employ of the city prior to the date he would have first become eligible to retire as provided in this part A, for any reason except his discharge, retirement or death, he shall be entitled to a retirement allowance computed according to section 2 of this article, as said section was in force as of the date his employment with the city last terminated; provided, that he does not withdraw his accumulated contributions from the Annuity Savings Fund prior to the effective date of his retirement allowance.
>
> His retirement allowance shall only begin the first day of the calendar month next following the month in which his application for same is filed with the board of trustees, on or after the date he would have been eligible to retire had he continued in city employment. Unless otherwise provided in this Chapter, such person shall not receive service credit for the period of his absence from city employment nor shall he or his beneficiary be entitled to any other benefit afforded in this Chapter except the benefits afforded in Part A, Section 2 or Part D of this Article VI, notwithstanding his membership has terminated. (As amended September 1, 1964. In effect September 15, 1964. As amended August 6, 1986. In effect July 1, 1969. As amended November 7, 1972. In effect July 1, 1973.)

On January 1, 1983, plaintiff began receiving his "40 and 8" retirement allowance. On May 11, 1983, plaintiff requested from defendant payment for 50 percent of the 265 days of unused sick leave and hospitalization and medical insurance coverage. Plaintiff claimed entitlement to these additional benefits pursuant to certain resolutions passed by the Detroit City Council providing for payment of unused sick leave and for insurance coverage to employees who retire from employment with defendant city. Plaintiff commenced this lawsuit when his requests were denied.

The parties brought cross-motions for summary disposition. On June 30, 1986, the trial court denied summary disposition to defendant and granted plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10). The court ordered defendant to pay plaintiff fifty percent of his unused sick days and to provide hospital and medical insurance coverage to plaintiff and his spouse, in accordance with resolutions of the Detroit City Council in effect in January, 1983.

Defendant filed a delayed application for leave to appeal which this Court denied on April 9, 1987. On October 20, 1987, the Supreme Court remanded the case to this Court for consideration as on leave granted. We reverse in part and affirm in part.

The "40 and 8" benefit provision was added to the General Retirement System by amendment on September 1, 1964, effective September 15, 1964. The Detroit City Council resolutions governing health insurance benefits originally provided for hospitalization and medical insurance for active employees and further provided that "the City will also pay the premiums for regular retirees and one-half of the premium for the spouses of the retirees who retire on/or after July 1, 1969, but not for other dependents of the retirees." A subse-

quent resolution provided that full payment for spouses of "regular retirees" would be paid. The council resolutions governing sick leave payout provide for the payment of fifty percent of unused sick leave to service retirants with service retirement pay under title IX, chapter VI. The issue presented to the trial court and now to us is whether the terms "regular retirees" and "service retirants" employed in the council resolutions include a city employee who resigned pursuant to the "40 and 8" benefit provision.

The general rules of statutory construction are applicable in construing provisions of the city charter. *Woods v Bd of Trustees,* 108 Mich App 38, 42; 310 NW2d 39 (1981). Neither "regular retirees" nor "service retirants" are defined terms in the charter. Undefined terms should generally be given their common and ordinary meaning. *Swift v Kent Co,* 171 Mich App 390, 393; 429 NW2d 605 (1988). Furthermore,

> Pension laws, being remedial in nature, should be liberally construed in favor of the persons intended to be benefited thereby. If a provision is ambiguous and uncertain, the courts will consider the obvious purposes and objects sought to be attained and will construe the language used, insofar as it reasonably permits, to the end of giving it vitality and efficiency in the accomplishment of such purposes and objects. [*O'Connell v Dearborn Police & Fire Pension Bd,* 334 Mich 208, 214-215; 54 NW2d 301 (1952), quoting from 3 McQuillin, Municipal Corporations (3d ed), § 12.143.]

We first address whether plaintiff is entitled to an accumulated unused sick leave payout.

The council resolution that provided for the payment of unused sick leave applies only to "re-

tirants." For purposes of defendant's pension plan, a retirant is defined as "a member [of the retirement system] who retires with a retirement allowance or pension paid by the retirement system." Detroit Charter, tit IX, ch 6, art IV, § 1.23. A person who resigns from city employment under the "40 and 8" provision has a deferred vested interest in receiving a retirement allowance "notwithstanding his *membership* [in the retirement system] has terminated." Detroit Charter, tit IV, ch 6, art IV, part A, § 1.4.

It is a well-established rule of charter construction that the language used must be given its plain meaning, and no words should be treated as surplusage. *City of Sterling Heights v General Employees Civil Service Comm,* 81 Mich App 221, 224; 265 NW2d 88 (1978). Charter provisions pertaining to a given subject matter must be construed together, and if possible harmonized. *Brady v Detroit,* 353 Mich 243, 248; 91 NW2d 257 (1958).

Construing § 1.23 in conjunction with § 1.4, we understand the plain meaning of these sections to be that plaintiff lost his membership in the retirement system upon his resignation from city employment, although he did retain the right to a retirement allowance once he reached retirement age. Accordingly, plaintiff cannot be said to have been a "member who retires." We find therefore that plaintiff does not fall within the definition of "retirant" and is not entitled to an accumulated unused sick leave payout. The trial court's finding to the contrary is clearly erroneous.

We next address whether plaintiff is entitled to hospital and medical coverage.

The council resolution that provided for payment of health care insurance premiums applies to "retirees," not retirants. The pension plan contains no definition of retiree.

In determining whether the resolutions providing hospitalization and medical insurance benefits to "regular retirees" included "40 and 8 retirees" under the general retirement system, we look to the purpose behind the "40 and 8" retirement option. In the absence of language to suggest otherwise, the *only* difference between retirement after twenty-five years and the "40 and 8" retirement is the amount that the retirees receive based upon years of service.

Given the similar purpose behind the "40 and 8" provision contained in the general retirement system in light of the rule that pension provisions should be liberally construed in favor of their intended beneficiaries, we hold that the trial court correctly found plaintiff entitled to hospital and medical coverage.

Accordingly, we reverse the trial court's order granting summary disposition to plaintiff as it pertains to the payout for unused sick leave but affirm the order as it pertains to the award of health care insurance coverage.

Reversed in part and affirmed in part.