## LAZARUS v CITY OF DETROIT

Docket No. 113194. Submitted March 15, 1990, at Detroit. Decided
October 22, 1990. In lieu of granting leave to appeal, the
judgments of the Court of Appeals and the Wayne Circuit
Court are vacated, and the case is remanded to the Wayne
Circuit Court for further proceedings, 437 Mich —.

Gary Lazarus brought an action in the Wayne Circuit Court
against the City of Detroit, seeking payment of fifty percent of
the value of his unused sick leave and payment of medical and
hospitalization insurance pursuant to the retirement provisions
of the Detroit city charter and the terms of a collective bargain-
ing agreement, following his retirement at age forty-eight from
the city's water and sewerage department. The court, John H.
Hausner, J., granted summary disposition in favor of the
plaintiff, ruling that no genuine issue of material fact existed
and the plaintiff was entitled to judgment as a matter of law.
The defendant appealed.

The Court of Appeals *held:*

Under the city charter, an employee leaving city employment
at the age of at least forty years and with credited service of at
least eight years is a service retirant who is entitled to pay-
ment of fifty percent of unused sick leave and payment of
medical and hospitalization insurance.

Affirmed.

REILLY, J., concurring with the majority's conclusion that the
plaintiff is entitled to payment for unused sick leave in light of
the fact that the defendant did not contest the plaintiff's
assertion that the collective bargaining agreement provided for
such payment, stated that the plaintiff is not entitled to medi-
cal and hospitalization insurance because, as an employee
leaving city employment under the "forty and eight" provision
of the city charter, he was not a "service retirant with service
retirement pay" entitled to payment of unused sick leave or a

REFERENCES

Am Jur 2d, Pension and Retirement Funds §§ 191, 202, 417, 1699.
See the Index to Annotations under Collective Bargaining; Munici-
pal Corporations; Pension and Retirement; Sick Leave.

"regular retiree" entitled to medical and hospitalization insurance.

1. MUNICIPAL CORPORATIONS — CITY CHARTERS — JUDICIAL CONSTRUCTION.

    The general rules of statutory construction are applicable to the interpretation of a city charter.

2. MUNICIPAL CORPORATIONS — PENSIONS — JUDICIAL CONSTRUCTION.

    Municipal pension laws, being remedial in nature, should be liberally construed in favor of the persons intended to be benefitted by them.

*Shrauger, Dunn & Aronson, P.C.* (by *Gary A. Benjamin*), for the plaintiff.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Thomas L. Walters* and *Terri L. Hayles,* Assistant Corporation Counsel, for the defendant.

Before: REILLY, P.J., and MICHAEL J. KELLY and H. E. DEMING,* JJ.

MICHAEL J. KELLY, J. Defendant City of Detroit appeals from a circuit court order granting summary disposition in favor of plaintiff Gary Lazarus. Plaintiff sued defendant to obtain benefits under defendant's retirement plan and for compensation for unused sick leave days. Plaintiff moved for summary disposition under MCR 2.116(C)(10), which the court granted, finding that plaintiff was entitled to the relief requested. We affirm.

Gary Lazarus had been employed by the city's water and sewerage department for twenty-eight years at the time he applied for a service retirement in August of 1986. The board of trustees of the city's retirement system in September of 1986 approved Lazarus' application for a "service retire-

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

ment" effective in October of 1986. Correspondence from the board of trustees to Lazarus and the water and sewerage department referred only to a service retirement, and never mentioned that he would not receive the full benefits of a service retirement. A summary of the board meeting approving Lazarus' retirement listed his name under a list of service retirements, but with an asterisk denoting a vested pension.

As a service retiree, Lazarus would be entitled to payment for fifty percent of his accumulated, unused sick leave, which came to $18,298.80, plus hospitalization and medical insurance benefits. When he did not receive payment for his unused sick leave, plaintiff sued defendant for breach of contract to recover this amount. Plaintiff later amended his complaint to request all insurance benefits due him as a service retiree.

Plaintiff moved for summary disposition under MCR 2.116(C)(10). In support of his motion, plaintiff presented documents from the board of trustees of the retirement system indicating approval of his service retirement. Plaintiff also claimed that he was entitled to compensation for unused sick leave pursuant to a provision in his collective bargaining agreement. In response to plaintiff's motion, defendant argued that plaintiff was not a service retiree entitled to sick leave payout and health insurance benefits, but instead that he had received a "vested pension" under the city's charter. Defendant did not address whether plaintiff was entitled to sick leave payout under his collective bargaining agreement. The court granted plaintiff's motion, finding that no genuine issue of material fact existed and that plaintiff was a service retiree under the city's retirement system and entitled to all insurance and other benefits of a service retiree. The court ordered judgment for

plaintiff in the amount of $18,298.80, plus interest. Defendant now appeals the circuit court's order as of right.

On appeal, the city argues that Mr. Lazarus was not a "service retirant" under the city charter, and that the circuit court erred in so holding. We find no error.

Summary disposition under MCR 2.116(C)(10) tests the factual support for a claim and is appropriate only if the court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a factual deficiency which cannot be overcome. *Boyle v Odette,* 168 Mich App 737, 742-743; 425 NW2d 472 (1988).

Here the dispute was not of a factual nature, but instead centered on the proper interpretation of the city charter. The general rules of statutory construction are applicable to the interpretation of the city charter. *Brady v Detroit,* 353 Mich 243, 248; 91 NW2d 257 (1958). The primary goal of interpretation of the charter is to give effect to the intent of the drafters. *Browder v International Fidelity Ins Co,* 413 Mich 603, 611; 321 NW2d 668 (1982). Provisions pertaining to a given subject matter must be construed together and harmonized if possible. *Brady,* p 248. Where the drafters used certain and unambiguous language, the plain meaning of the written provisions must be followed. *Browder,* p 611. Undefined terms must be given their common and ordinary meaning. *Swift v Kent Co,* 171 Mich App 390, 393; 429 NW2d 605 (1988). Pension laws, being remedial in nature, should be liberally construed in favor of the persons intended to be benefitted by them. *O'Connell v Dearborn Police & Fire Pension Bd,* 334 Mich 208, 214-215; 54 NW2d 301 (1952).

Defendant claims that its charter provides for two separate types of retirement—service and

vested. Retirement provisions are contained within title IX, chapter 6 of the Detroit Charter. Plaintiff retired pursuant to title IX, chapter 6, article VI, part A, § 1.4. Defendant argues that by retiring under § 1.4, plaintiff received only a "vested" pension, rather than a service retirement. The city claims that service retirements are set forth only under § 1.1 of article VI, part A, and that the provisions of § 1.4 do not provide for a service retirement. Another panel of this Court, in *Clexton v Detroit*, 179 Mich App 209, 214; 445 NW2d 201 (1989), addressed this identical issue and evidently agreed with the city, stating:

> A person who resigns from city employment under the "40 and 8" provision has a deferred vested interest in receiving a retirement allowance "notwithstanding his membership [in the retirement system] has terminated." Detroit Charter, tit IV, ch 6, art IV, part A, § 1.4.

We cannot agree with *Clexton*. We find the city's argument and the Court's finding in *Clexton* unsupported by the language of the charter. The charter provisions do not refer to or define a "vested" pension or retirement or distinguish between a service and vested retirement.

Article VI, part A is entitled "Service Retirement." Four different methods of retirement are listed under this heading, under §§ 1.1, 1.2, 1.3 and 1.4. There is no language contained in any of these sections indicating whether they grant a full service retirement or merely a vested pension, nor is there any additional language distinguishing § 1.1 as the exclusive method for obtaining a service retirement. The provision under which plaintiff Lazarus retired, part A, § 1.4, provides:

> Retirement allowance for certain persons leaving city employment after eight years service.

Should any member who (1) has attained age forty years, and (2) has eight or more years of credited service, leave the employ of the city prior to the date he would have first become eligible to retire as provided in this part A, for any reason except his discharge, retirement or death, *he shall be entitled to a retirement allowance computed according to section 2 of this article,* as said section was in force as of the date of his employment with the city last terminated; provided, that he does not withdraw his accumulated contributions from the Annuity Savings Fund prior to the effective date of his retirement allowance.

His retirement allowance shall only begin the first day of the calendar month next following the month in which his application for same is filed with the board of trustees, on or after the date he would have been eligible to retire had he continued in city employment. Unless otherwise provided in this Chapter, such person shall not receive service credit for the period of his absence from city employment nor shall he or his beneficiary be entitled to any other benefit afforded in this Chapter except the benefits afforded in Part A, Section 2 of Part D of this Article VI, notwithstanding his membership has terminated. [Emphasis added.]

Section 1.4 specifically provides that a person leaving the city's employment under its provisions shall be entitled to a retirement allowance under § 2. Article VI, part A, § 2 is entitled "Service retirement allowance." This is the same retirement allowance as provided for retirees under §§ 1.1, 1.2 and 1.3 of part A. The only difference between retirement based upon the different sections of part A would be the amount of service retirement allowance received under part A, § 2, which is determined by years of service rather than the method of retirement.

Our review of the charter's provisions indicates that Mr. Lazarus is a service retiree under the

terms of title IX, chapter 6 of the charter. Article III of chapter 6 provides the definitions of key phrases used within the provisions of Chapter 6. Section 1.23 of article III provides:

> "Retirant" means a member who retires with a retirement allowance or pension paid by the retirement system.

Section 1.18 of article III provides:

> "Retirement" means a member's withdrawal from the employ of the city with a retirement allowance or pension paid by the retirement system.

Section 1.3 of article III provides:

> "Member" means any person who is included in the membership of the retirement system.

Under the provisions of article IV, § 1(a), all persons who are employees of the city are included in the membership of the retirement system. Thus, because plaintiff was an employee of the city prior to his retirement, he was included in the membership of the retirement system, and was a member under § 1.3 of article III. Because plaintiff was a member who withdrew from the employ of the city with a retirement allowance, his withdrawal from employment was therefore "retirement" under article III, § 1.18. Plaintiff retired with a retirement allowance paid by the retirement system and so was a "retirant" as defined by § 1.23. Plaintiff fits the definition of a retirant under the charter, retired under a provision entitled service retirement, and received a service retirement allowance as his pension. As there are no provisions in the

charter to the contrary, plaintiff is obviously a service retirant under the meaning of the charter.

Defendant also argues that plaintiff cannot be a service retirant as he lost his membership in the city's retirement system. Defendant points out that under article IV, § 2, when a member leaves employment with the city he ceases to be a member of the retirement system. The panel in *Clexton, supra,* p 214, used similar reasoning, concluding:

> Construing § 1.23 in conjunction with § 1.4, we understand the plain meaning of these sections to be that plaintiff lost his membership in the retirement system upon his resignation from city employment, although he did retain the right to a retirement allowance once he reached retirement age. Accordingly, plaintiff cannot be said to have been a "member who retires." We find therefore that plaintiff does not fall within the definition of "retirant" and is not entitled to an accumulated unused sick leave payout.

There is no support for the city's argument or the finding in *Clexton.* Article IV, § 2 provides:

Cessation of membership; re-employment by city.

> Except as otherwise provided in this chapter, *should any member leave the employ of the city, for any reason except his retirement or death, he shall thereupon cease to be a member* and his credited service at that time shall be forfeited by him. In the event he is re-employed by the city, he shall again become a member of the retirement system. Should his said re-employment occur within a period of six years from and after the date his city employment last terminated, his credited service last forfeited by him shall be restored to his credit. *Should he become a retirant or die, he shall thereupon cease to be a member.* [Emphasis added.]

As previously noted, plaintiff's termination of employment was a "retirement" as defined by article III, § 1.18. Thus, even if we accept the city's reasoning, plaintiff did not lose his membership status by leaving his employment with the city as his leave was a retirement. Additionally, the last sentence of § 2 indicates that employees who become retirants also lose their membership in the retirement system. Following defendant's logic, all employees who retire and become retirants would then lose their membership in the retirement system and therefore be ineligible for any benefits due them as service retirants. This result is contradictory, absurd, and obviously incorrect.

We think *Clexton* was wrongly decided. *Clexton* allegedly relies upon the language of article VI, part A, § 1.4 and article III, § 1.23 to find that the plaintiff therein was not a "member who retires" or a "retirant." Our review of the plain language of these provisions belies such a conclusion. As previously noted, § 1.4 provides that plaintiff is entitled to a retirement allowance according to § 2 of part A—a service retirement allowance. Plaintiff was a member who retired with a retirement allowance paid by the retirement system, and so was a retirant under the plain language of § 1.23.

The circuit court properly interpreted the city charter to find Gary Lazarus a service retiree entitled to payment for sick leave and health insurance benefits. We disagree with Judge REILLY's dissent on this issue principally because her interpretation tends to fill gaps left in the city's enabling legislation and resolutions which could easily have been filled expressly by the city. Defendant's contentions to the contrary were unsupported by the evidence or by the provisions of the city charter. Summary disposition for plaintiff was proper.

Affirmed.

H. E. Deming, J., concurred.

Reilly, J. *(concurring in part and dissenting in part)*. I agree that plaintiff is entitled to sick leave payback benefits, but for reasons other than those stated by the majority. I respectfully dissent with respect to the majority's opinion that plaintiff is entitled to payment of his hospitalization and medical insurance premiums.

Plaintiff voluntarily terminated his employment with the city at age forty-eight after twenty-eight years of service effective October 1, 1986. Plaintiff claims that, because he received a retirement allowance under the retirement plan provided in title IX, chapter VI, article VI, part A, § 1.4 of the 1918 City of Detroit Charter,[1] he is a "service retirant with service retirement pay" entitled to unused sick leave payback under a resolution of the Detroit City Council[2] and pursuant to his

[1] The City of Detroit retirement plan under the 1918 charter was continued in effect under the 1974 charter.

[2] Plaintiff has never cited to this Court any council resolutions which were in effect as of the date of his retirement in 1986. In his briefs, plaintiff asks this Court to rely on the reasoning of *Smith v Detroit,* unpublished opinion per curiam of the Court of Appeals, decided March 19, 1980 (Docket No. 78-2934), and *Clexton v Detroit,* 179 Mich App 209; 445 NW2d 201 (1988).

According to *Smith, supra,* a resolution granting sick leave payback benefits to certain retirants of the City of Detroit was adopted on November 1, 1961 [sic—November 8, 1961], allegedly prior to the creation of the "forty and eight class" in 1964. Neither party has provided this Court with a copy of the resolution.

Ordinarily this Court would not conduct research for either party. However, because the majority has determined that the case should be decided in spite of the parties' failure to submit the applicable law and its history, I am compelled to consider the issues raised, and address them relying on the information available in public records and the *Clexton* and *Smith* files.

The resolution adopted November 8, 1961, provides in pertinent part:

Resolved. That the City Controller be and he is hereby authorized to honor payrolls for payment of unused sick leave to retirants according to the following provisions:

collective bargaining agreement. In addition, plaintiff contends he is a "regular retiree" entitled to payment of hospital and medical insurance premiums under another city council resolution.[3] Although I agree that plaintiff is entitled to receive sick leave payback benefits under his collective bargaining agreement claim, I do not believe plaintiff is entitled to any benefits based on city council resolutions.

I

Article VI, part A is entitled "Service Retirement." Section 1.1 of part A, entitled "Retirement

1. Payment of unused sick leave shall be limited to compensation for one-half of the retirants' unused sick leave, not to exceed thirty (30) sick leave days, or in the case of members of the Fire Fighters Retirement System, the equivalent of forty-two (42) payroll days.

2. Upon proof of employees' eligibility, such payment shall be effected in lump-sum, dated the day prior to that of retirement or separation and computed at rates existing as of that date, . . . .

3. Payrolls shall not be processed except and until certification by the Retirement Board of Trustees of the respective pension plans, to the effect that the employee has actually retired or has the required time to qualify as herein otherwise provided.

4. Payment shall be limited to service retirants with service retirement pay under Charter Title IV, Chapters XV and XXI and Charter Title IX, Chapters V, VI and VII, and to those employees with at least four and less than ten years of service who separate from service without retirement pay by reason of their reaching age 65, in accordance with Charter Title IX, Chapter VI, Article VI, Part A, Section 1.3. [JCC, November 8, 1961, pp 2292-2293.]

This November 8, 1961, resolution is apparently the same one discussed, but not cited, in *Clexton, supra.*

[3] This resolution is also not identified by plaintiff. *Clexton, supra,* discusses a council resolution whereby the city undertook the obligation to pay hospitalization and medical insurance for active employees and agreed to pay the premiums for "regular retirees." The opinion refers to the resolution without indicating its origin, but the briefs in the *Clexton* case contain copies of resolutions relating to this subject adopted in 1974 and 1977. See JCC, October 2, 1974, pp 2141-2142, and JCC, May 17, 1977, p 1038. It apparently is the resolution relied on by plaintiff.

at age sixty, or at age fifty-five" provides that
"[a]ny member, [of the retirement system] who has
attained or attains age sixty years and has ten or
more years of credited service, or . . . has thirty or
more years of credited service may *retire* upon his
written application."[4] Upon his retirement, he
shall receive a retirement allowance as provided in
§ II.

Section 1.2 entitled "Retirement after twenty-
five years' service" provides that any member who
entered the employ of the city prior to July 1,
1938, who has acquired twenty-five years of cred-
ited service prior to reaching age sixty "may *re-
tire*" and is entitled to the benefits set forth in
that section.

Section 1.3 entitled "Mandatory retirement age;
extension of service" provides that any member,
except an elected official, who has attained age
sixty-five *shall be separated from service,* although
such member may be continued in service with
approved extensions until age sixty-nine. If such a
member has eight or more years of credited ser-
vice at the time of his separation, he shall receive
a retirement allowance as provided for in § II of
part A.

Section 1.4 entitled "Retirement allowance for
certain persons leaving city employment after
eight years service" provides that any member
who (1) has attained age forty years, and (2) has
eight or more years of credited service who shall
"*leave the employ of the city prior to the date he
would have first become eligible to retire as pro-
vided in this part A, for any reason except his
discharge, retirement or death,* . . . shall be enti-
tled to a retirement allowance computed according

---

[4] The age fifty-five requirement has been eliminated by ordinance.
Any member who has thirty years of credited service may retire
without age restrictions.

to § 2 of this article . . . ; provided, that he does not withdraw his accumulated contributions from the Annuity Savings Fund prior to the effective date of his retirement allowance." (Emphasis added.)

Section 1.4 further provides that the employee's retirement allowance[5] "shall only begin the first day of the calendar month next following the month in which his application for same is filed with the board of trustees, *on or after the date he would have been eligible to retire had he continued in city employment*." (Emphasis added.) Neither § 1.3 nor § 1.4 suggests that a member "retires" when he or she "leaves" or is "separated" from service. To the contrary, the emphasis is on the termination of services prior to eligibility for retirement. Payment of benefits is to begin after the date the employee would have been eligible to retire had he continued in the city's employment. Assuming that plaintiff did not withdraw all of his accumulated contributions from the annuity savings fund prior to the effective date of his termination, he is entitled to receive pension and annuity benefits computed under § II of part A on that future date on which he would have been eligible to retire had he continued in city employment. Although his right to a retirement allowance is vested when he leaves city employment, he is not a "retirant" by reason of that right. "Retirant" means a member who retires with a retirement allowance or pension paid by the retirement system. Detroit Charter, tit IX, ch VI, art VI, § 1.23. Plaintiff is considered to be in "retirement" only after the retirement allowance begins. "Retire-

---

[5] "Retirement Allowance" means the sum of the annuity, if any, and the pension. Article III, § 1.117. It is not clear from the exhibits provided whether plaintiff withdrew all or part of his contributions to the annuity savings fund.

ment" means a member's withdrawal from the employ of the city with a retirement allowance or pension paid by the retirement system. Detroit Charter, tit IX, ch VI, art III, § 1.18.

In support of his position, plaintiff cites *Smith v Detroit,* unpublished opinion per curiam of the Court of Appeals, decided March 19, 1980 (Docket No. 78-2934), which interpreted a similar "forty and eight" provision in the policemen and firemen retirement plan. (See n 2, *supra.*) That panel determined that the trial judge did not clearly err in declaring that Smith was entitled to the benefits afforded by the council resolution because, when article VI was amended to add the "forty and eight" class, "the addition was made under part A, entitled 'Service Retirement Allowance.'" The *Smith* panel concluded:

> It is reasonable to infer then, that "40 and 8" retirees were to be included as "service retirants" entitled to the sick leave pay-back benefits. . . . [S]ince there is no language to suggest otherwise, the *only* difference between retirement after 25 years and the "40 and 8" retirement is the amount that the retirees receive based upon years of service.

That conclusion ignores all the differences in language which are discussed above. The insertion of the "forty and eight" class in article VI was a logical addition to that part of the charter which already provided for the same type of benefits to which the "forty and eight" class was entitled. But § 1.4 was carefully phrased, as was § 1.3, to distinguish the members referred to therein from the members who "may retire" under § 1.1 and § 1.2.

The *Smith* Court also ignored paragraph four of the November 8, 1961, resolution which provides:

> Payment shall be limited to service retirants
> with service retirement pay under . . . Charter
> Title IX, Chapters V, VI and VII and to those
> employees with at least four and less than ten
> years of service who separate from service without
> retirement pay by reason of their reaching age 65
> . . . .

Because plaintiff has not presented this Court with the history of the resolution, we do not know whether the 1961 resolution was ever amended to provide payment of sick leave payback benefits to those who left the city under the "forty and eight" section. However, it is apparent from the language of paragraph four that the employees over age sixty-five who were required to terminate their employment under § 1.3 were identified separately and, therefore, were clearly not considered "service retirants with service retirement pay."

Plaintiff's entitlement to the future payment of a vested annuity and pension does not qualify him as a "service retirant with service retirement pay" under Title IX, Chapter VI. As noted above, "retirant" means "a member who *retires with* a retirement allowance or pension *paid* by the retirement system." (Emphasis added.) " 'Retirement' means a member's *withdrawal* from the employ of the city *with* a retirement allowance or pension *paid* by the retirement system." (Emphasis added.) Detroit Charter, tit IX, ch VI, art 4, § 1. These definitions use the verb "paid," connoting past tense. The definition does not use the future tense, "to be paid." The context requires that the retirement allowance be paid in order to be qualified as a "retirant" or to enjoy "retirement."

Under part A, only those members who qualify under §§ 1.1, 1.2 or 1.3 are entitled to payment of the retirement allowance at the time they leave their employment. Only those who qualify under

§§ 1.1 and 1.2 are, by definition, "retirants." Those who qualify under § 1.3 are entitled to immediate payment of the retirement allowance. However, because they were "separated" from service, and did not "retire," they are in "retirement," but they are not "retirants." Plaintiff, as a "forty and eight" employee, was not entitled to immediate payment of his retirement allowance. Payment of his retirement allowance was to be made at some time in the future on or after the date he would have been eligible to retire had he continued in city employment.

Plaintiff's right to benefits under § 1.4 is no more nor less than an employee who leaves the city's service at age forty with eight years of service. Because plaintiff was employed twenty-eight years and eleven months, his retirement allowance, computed under § 2, will be considerably more than the employee who terminates at age forty with eight years of service. However, both are subject to the provision that the retirement allowance "shall only begin . . . on or after the date on which he would have been eligible to retire."

Although there is no basis in § 1.4 for the payment of the retirement allowance to plaintiff beginning October 1, 1986, immediately upon his termination of employment, the board of trustees approved his application for service retirement, and the retirement benefits were authorized and paid effective October 1, 1986.[6] This occurred even

---

[6] According to the exhibits, plaintiff was paid his retirement allowance effective October 1, 1986, immediately upon his termination of employment. No explanation is given as to why plaintiff's retirement allowance was paid as of that date, when according to part A, § 1.4, his retirement allowance should not have been paid until he served thirty years or attained the age of sixty years. Both parties have ignored the language with respect to the time of payment. The plaintiff, perhaps, because he was paid his retirement allowance too soon; the defendant, perhaps, because it paid the allowance too soon.

though: (1) the word "vested" was handwritten across the top of the form application for service retirement; (2) the retirement report to the board of trustees, which was approved, lists plaintiff's retirement as "vested"; and (3) the minutes of the meeting of the board of trustees reflect approval of plaintiff's application with the notation that he had a "vested" pension.

Defendant has not taken the position that a mistake was made when the board of trustees authorized immediate payment of the retirement allowance to plaintiff. Therefore I must conclude that under some special circumstances in this case, of which we have not been informed, plaintiff is in "retirement" with a "retirement allowance" effective immediately upon his termination of employment. This result occurs because of the special approval given to plaintiff by letter from the board of trustees dated September 4, 1986, and the immediate payment of the retirement allowance. The waiting requirement of § 1.4 was apparently, for some reason, waived in plaintiff's favor. As a matter of law, under the charter, plaintiff was not entitled to be treated as a "retirant" inasmuch as he terminated his employment without being "eligible to retire." Therefore, plaintiff is not entitled to unused sick leave payback by reason of the November 8, 1961, City Council resolution.

II

Plaintiff also contends that he is entitled to the unused sick leave payback benefit by reason of his collective bargaining agreement. Defendant failed to contest this position. Therefore, defendant waives this issue. Summary disposition in favor of plaintiff with respect to his claim for unused sick leave payback under the collective bargaining agreement should be affirmed.

III

Plaintiff also contends he is entitled to payment of his hospitalization and medical insurance premiums as he is a "regular retiree." Because plaintiff has failed to provide either the trial court or this Court with any authority or any reference to the resolution upon which he relies, I would reverse the trial court's grant of summary disposition in plaintiff's favor on this issue. However, as the majority has addressed this issue, I feel constrained to do so as well.

I am forced to assume that plaintiff is relying upon the resolution providing for payment of hospital and medical premiums which was discussed, but not identified or cited, in *Clexton v Detroit,* 179 Mich App 209; 445 NW2d 201 (1988). (See ns 2 and 3, *supra.*) That resolution, identified in the *Clexton* parties' briefs, adopts the September 26, 1974, recommendation by the labor relations division of the personnel department regarding 1974-75 wage and fringe adjustments for union and nonunion employees. The resolution, which relates only to fiscal year 1974-75, provides in part:

> [F]or fiscal year 1974-75, the City will pay the full premium for hospitalization and medical insurance . . . for employees . . ., duty disability retirees . . ., and duty death beneficiaries . . ., as provided by Chapter XVI, Article IX of the Municipal Code of the City of Detroit. The City will also pay the premium for regular retirees and one-half of the premium for the spouses of the retirees who *retire* on/or after July 1, 1969. [Emphasis added. See JCC October 2, 1974, pp 2141-42, incorporating Schedule II—Fringe Benefit Improvements—Nonunion Employees—Excluding Police and Fire Employees.]

As plaintiff has not submitted any research on

this resolution, or any similar resolution which would be applicable to plaintiff's resignation date, I cannot reasonably interpret it to apply to plaintiff's situation. However, contrary to the reasoning in *Clexton, Smith,* and of the majority, I do not believe a reasonable interpretation of this language requires a determination that the term "regular retirees" includes members of the "forty and eight" class. The term "regular retirees" was used to distinguish them from "duty disability retirees." As explained above, under article VI, part A, only those members who qualified under §§ 1.1 and 1.2 "may retire." Similar distinctions are made in the police and firemen's retirement plan. Detroit Charter, tit IX, ch VII, art VI, §§ 1-4. This interpretation is reinforced by the use of the expression "who *retire* on/or after July 1, 1969." As noted above, the word "retire" is only used in §§ 1.1 and 1.2. In § 1.3, the member "shall be separated." In § 1.4, benefits are provided for any member who *leaves* the employ of the city.

Even assuming that the 1974-75 budget resolution was readopted unchanged, to cover the date of plaintiff's termination, and assuming the benefit was not covered by the collective bargaining agreement, plaintiff should not be provided with hospitalization and medical insurance premiums as he is not a "retirant," and never "retired." The fact that he is a member of the "forty and eight" class and being paid a retirement allowance does not place him in the category of "regular retiree."

I would affirm the trial court's grant of summary disposition as to plaintiff's claim for unused sick leave payback under the collective bargaining agreement, and reverse the trial court's grant of summary disposition in favor of plaintiff regarding the obligation of the city to pay premiums for hospital and medical insurance.